UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Priority | ____ |
|---|---|
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** CV 10-06195 SJO (JCx)     **DATE:** August 31, 2011

**TITLE:** L.A. Triumph, Inc. v. Madonna Louise Veronica Ciccone, et al.

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                Not Present
Courtroom Clerk                                 Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**              **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                     Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** [Docket No. 87]

This matter is before the Court on Defendants MG ICON, LLC and Macy's Retail Holdings, Inc.'s (collectively, "Defendants") Motion for Summary Judgment ("Motion"), filed on June, 27 2011.[1] (Docket No. 87.)  Plaintiff L.A. Triumph, Inc. ("Plaintiff") submitted an Opposition ("Opposition"), to which Defendants filed a Reply ("Reply").[2]  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 25, 2011.  *See* Fed. R. Civ. P. 78(b). For the following reasons, Defendants' Motion for Summary Judgment is **DENIED**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a California corporation that was incorporated on August 11, 2003. (Pl.'s Resp. to Defs.' Statement of Uncontroverted Facts ("Resp. to Uncontroverted Facts") ¶ 1.)  Plaintiff sells and markets clothes under the "Material Girl" trademark.  (First Am. Compl. ("FAC") ¶¶ 3, 9.)  Plaintiff's predecessor-in-interest, OC Mercantile Corp. ("OC Mercantile"), filed a trademark registration with the California Secretary of State in January 1997.  (*Id.* ¶¶ 9, 11.)  The registration was issued by the State of California, and OC Mercantile purportedly advertised and sold merchandise using the "Material Girl" mark nationwide from 1997 to 2003.  (*Id.* ¶¶ 11, 12.)  In 2003, Plaintiff succeeded OC Mercantile and allegedly continued the sale of juniors' clothing for women using the "Material Girl" mark.  (*Id.* ¶ 13.)   In 2007, Plaintiff's California trademark registration for "Material Girl"

---

[1] On November 22, 2010, the Court issued an order dismissing Madonna Louise Veronica Ciccone as a Defendant to the instant action for lack of subject matter jurisdiction.  (Docket No. 22.)

[2] Plaintiff also filed evidentiary objections to Defendants' declarations filed in support of their motion for summary judgment.  (Docket No. 94.)  To the extent the Court relies on evidence to which Plaintiff objected, those objections are overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 10-06195 SJO (JCx)   DATE: August 31, 2011

expired. (Resp. to Uncontroverted Facts ¶ 16.) Neither Plaintiff nor OC Mercantile had a federal trademark registration for "Material Girl" with the United States Patent and Trademark Office ("PTO"). (*Id.* ¶ 11.)

Defendant Material Girl Brand, LLC ("MGB") is a Delaware corporation that was incorporated on December 4, 2009. (Defs.' Statement of Uncontroverted Facts ("Uncontroverted Facts") ¶ 18.) On March 1, 2010, MGB changed its name to MG ICON, LLC. (*Id.* ¶ 20.) Defendant Macy's Retail Holdings, Inc. ("Macy's"), also a Delaware corporation, owns and operates the Macy's retail department store chain. (*Id.* ¶ 21.) Plaintiff alleges that Defendants MG ICON and Macy's infringed its trademark by advertising and selling clothing bearing the "Material Girl" mark. (*See* FAC.)

"Material Girl" was made famous by the international and recording artist Madonna Louise Veronica Ciccone ("Madonna"). (Uncontroverted Facts ¶ 22.) In 1985, Madonna recorded and made famous the song "Material Girl." (*Id.* ¶ 31.) She continued to perform the hit song over the course of her career and produced a music video to "Material Girl" as well. (*Id.* ¶¶ 33-34.) In 2010, Defendants MG ICON and Macy's allegedly began to advertise and sell a line of juniors' clothing for young women under the "Material Girl" trademark. (FAC ¶ 17.) MGB filed a trademark application with the PTO for clothing in international class 025 ("025 class") on December 4, 2009, under the application number 77/886,045 ("Trademark Application"). (Uncontroverted Facts ¶ 19; FAC ¶ 19.)

On October 12, 2010, Plaintiff filed its First Amended Complaint and alleged two causes of action: (1) declaratory relief; and (2) false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (2006). (FAC ¶¶ 24, 26-32.)

II.   DISCUSSION

   A.   Legal Standard for Summary Judgment

Federal Rule of Civil Procedure ("Rule") 56(a) mandates that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing' – that is, pointing out to the district court – that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 10-06195 SJO (JCx)</u>     DATE: <u>August 31, 2011</u>

there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

    1.    <u>First Use – Senior Trademark User</u>

Defendants argue that they are entitled to summary judgment because "[P]laintiff cannot establish . . . first use, i.e., that [Plaintiff] is in fact the senior user and owner of the Material Girl mark." (Mot. 2:12-16. (internal quotation marks omitted).) Defendants aver that Madonna created and first used the "Material Girl" trademark by releasing her famous song entitled "Material Girl," filming a music video, and using the title "Material Girl" for sale of clothing since 1985. (*Id.* at 4:10-5:12.)

The Ninth Circuit has held that "[t]he first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). A party "can rebut th[e] presumption [of validity of a trademark] by showing that it used the mark in commerce first, since the fundamental tenet of trademark law is that ownership . . . is governed by priority of use." *Id.*

Defendants' argument that Madonna created the "Material Girl" mark through her performances fails as a matter of law. This Court and other courts have recognized that the singing of a song does not create a trademark. *See Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1059 (C.D. Cal. 2004) (holding that "no trademark or service mark in a performing artists' signature performance" may exist); *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1167-68 (C.D. Cal. 2010) ("[A] performer cannot hold a trademark in her performance of a musical composition."); *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62-63 (2d Cir. 2001) ("[T]he law does not accord . . . trademark rights in the recording of . . . signature performance[s]."). Therefore, Defendants cannot establish, as a matter of law, that Madonna was the senior trademark user because of her "Material Girl" performances.

Similarly, summary judgment cannot be entered as to whether Madonna was the first user due to the sale of "Material Girl" merchandise. Numerous genuine issues of material fact exist, which will require the fact finder to weigh the credibility of proffered facts and witnesses. Defendants argue

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 10-06195 SJO (JCx) | **DATE:** August 31, 2011 |

that "Madonna is the Material Girl, and *she was the first user starting in 1985, including Class 025 clothing.*" (Mot. 1:4-6 (emphasis added and internal quotation marks omitted).) First, the language in Defendants' License and Services Agreement ("Agreement") contradicts Defendants' position. (*See* Decl. of Christopher W. Arledge ("Arledge Decl.") in Supp. of Pl.'s Opp'n ¶¶ 11-12, Exs. 3, 4.) The Agreement evinces that the "Material Girl" trademark may not have existed. (*See id.*) When viewing an earlier version of the Agreement, the language clearly states that "Licensor, Artist, and their Affiliates acknowledge that [they] currently have, and have had in the past, *no trademark or other proprietary rights*." (Arledge Decl. ¶ 38, Ex. 19. (emphasis added).) Such contradictory evidence casts doubt on whether Madonna and Defendants had a trademark and used it before Plaintiff. Second, Plaintiff provides conflicting testimony from Guy Oseary ("Oseary"), a partner in Purim LLC. Besides "Material Girl," Madonna and Oseary thought of several other names to start her fashion line, such as "Truth or Dare." (Dep. of Guy Oseary ("Oseary Dep.") 12:22-13:11.) In fact, Oseary admitted that it was his idea, not Madonna's, to use a fashion label related to Madonna.[3] (*Id.* at 13:16-24.) If, as Defendants aver, "Material Girl" is a well-established mark used since 1985 for clothing, then Oseary could not have been the person who came up with the idea to start a clothing line with the mark "Material Girl." Third, Defendants have only produced evidence showing that "Material Girl" merchandise was sold between August 2001 and January 2005. (Arledge Decl. ¶¶ 21, 24.) This is not conclusive evidence that Defendants first used the "Material Girl" mark before Plaintiff in January 1997. Thus, Plaintiff's evidence undermines the credibility of Defendants' statements, creating genuine issues of material fact. The Court, at this juncture, must draw all inferences in a light most favorable to Plaintiff and cannot make credibility determinations. Accordingly, as a matter of law, Defendants have not established that they, not Plaintiff, are the true owners and first users of the "Material Girl" mark.

Even if the Court were to assume that Madonna and Defendants are the senior users of the "Material Girl" mark, the size and scope of the protection of that mark creates a genuine issue of material fact. Defendants contend that their alleged 1985 "Material Girl" mark covers concert merchandise and women's fashion. (Mot. 4:10-5:12.) To support their argument, Defendants point to the sale of "$85 million of merchandise, including women's shirts, camisoles, pants, etc., . . . which 10% to 20% bear[ ] the 'Material Girl' trademark" as evidence of use in women's fashion.

---

[3]
> Q. So back up. So was it you who first had the idea, you know, hey, fashion label related to Madonna, this could be great, or did someone come to you with the idea?
> A. It was my idea. My idea is that Madonna's been known to help break many brands and launch many brands just by wearing it. And so the idea was -- I'm not a genius. The idea is pretty simple. Why not promote your own brands.

Oseary Dep. 13:16-25.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 10-06195 SJO (JCx)</u>              DATE: <u>August 31, 2011</u>

(*Id.* at 4:25-5:3.) Yet, Plaintiff argues that such evidence is only proof that Defendants used the "Material Girl" mark for merchandising, not clothing. (Opp'n 13:25-14:13.) Plaintiff avers that Defendants' evidence shows: (1) that Madonna imprinted "Material Girl" as a medium to advertise her music; and (2) that Madonna's clothing still only consisted of concert paraphernalia. (*Id.* at 13:25-28, 14:11-13.) Plaintiff points to Dell Furano, the Chief Executive Officer of Live Nation Merchandise, Inc. and the primary individual responsible for Madonna's merchandising since 1984. (Decl. of Dell Furano ("Furano Decl.") in Supp. of Defs.' Mot. ¶¶ 1-5.) Furano explicitly states that Madonna "did not grant Live Nation the rights to market clothing (*other than concert style shirts and tops*)." (Furano Decl. ¶ 28.) Defendants' proffered figure of "$85 million of merchandise, including women's shirts" may solely be composed of concert style shirts and tops. This is a factual inquiry that must be presented to the jury in order to determine the scope of the mark.

       2.      <u>Reverse Confusion – Likelihood of Confusion</u>

Defendants also argue that "even if there is somehow a material question of fact as to first use . . . the Court should still grant summary judgment [because] [t]here is no evidence of actual confusion." (Mot. 2:16-18.) Defendants aver that "[a]s a matter of law, no reasonable jury could find for [Plaintiff] because there is no evidence of actual or likely confusion to the public." (*Id.* at 1:10-17.)

In determining whether a likelihood of confusion exists, the Ninth Circuit examines a list of factors known as the *Sleekcraft* factors, which are: "(1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) intent in selecting mark; and (8) likelihood of expansion." *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) (citing *AMF v. Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the *Sleekcraft* likelihood of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

Despite Defendants' position, material factual disputes exist that may affect a majority of the *Sleekcraft* factors. For example, Defendants argue that Plaintiff is "targeting different markets" where its "clothing is sold in significantly different prices ranges." (Mot. 9:18, 10:1-2.) Defendants contend that Plaintiff "has purposely and strategically established a 'niche' market selling to medical supply companies as well as discount retailers." (*Id.* at 9:18-21.) Yet, the distinction between a Macy's-like department store and "discount retailers" is not clearly differentiated by Defendants. (*See generally id.*) Defendants also ignore the fact that clothing in department stores like Macy's often ends up in discount retailers. A reasonable jury may find that Defendants' "Material Girl" fashion clothing, when it ends up in discount retailers with Plaintiff's "Material Girl" products, will confuse shoppers. Moreover, Plaintiff provides contradicting evidence that it sells its clothing "to various *regular-priced* retail chains (i.e., Walgreens, etc.), *regular-priced* independent retail stores (i.e., Red Eye, etc.), . . . and discount retail outlets (Big Lots)." (Opp'n 5:6-9 (citing Decl. of Hafiz Lakhani ("Lakhani Decl.") in Supp. of Pl.'s Opp'n ¶¶ 20-22) (emphases

added).) Several of Plaintiff's invoices indicate various name-brand retailers, in some instances, for orders up to nearly $40,000. (Lakhani Decl. Ex. 4.) Thus, Plaintiff's evidence directly contradicts Defendants' alleged facts.

Furthermore, Defendants point to an alleged vast disparity of price range. (Mot. 10:3-7.) Defendants specifically argue that "Macy's upscale retail sales are in the $15 to $68 price range [and Plaintiff's] wholesale prices to its customers are in the $2.99 to $6.99 price range." (*Id.*) First, Defendants incorrectly compare prices set by retailers and prices set by wholesalers. Defendants do not compare wholesale price to wholesale price. (*See id.*) Second, Plaintiff actually states that its products "retail[ ] . . . from $6.99 to $20.00," not $2.99 to $6.99. (Lakhani Decl. ¶ 25.) Third, Plaintiff argues that Defendants' "items retail ibetween [sic] $6.99 and $39.00," not the $15 to $68 price range proffered as evidence by Defendants. (Arledge Decl. ¶ 8, Ex. 10.) Viewing the evidence in a light most favorable to Plaintiff, a substantial overlap exists in the prices of Defendants' and Plaintiff's products. As this Court has explained, "[b]ecause of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc.*, 279 F.3d at 1140.

Accordingly, the Court concludes that genuine issues of material fact exist as to the likelihood of confusion under *Sleekcraft*.

### 3. Defendants' Issue of Abandonment

Additionally, Defendants contend that even though Plaintiff filed a state trademark, it "had not been renewed and was apparently abandoned." (*Id.* at 5:23-25.)

"[A] court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark." *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 596 (9th. Cir. 2002). In order to show abandonment, "(1) discontinuance of trademark use[;] *and* (2) intent not to resume such use" must exist. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 936 (9th Cir. 2006).

Defendants' argument of abandonment requires findings of fact that a jury must make. For evidentiary support, Defendants argue that: (1) "[Plaintiff's] last purchase of Material Girl goods or inventory was in 2008"; and (2) "[Plaintiff] . . . stopped buying Material Girl Product." (*Id.* at 8:26-28.) Yet, Plaintiff "disputes that it intentionally allowed its registration to lapse, and instead [argues that Plaintiff] simply forgot to renew its application." (Resp. to Uncontroverted Facts ¶ 16.) Moreover, contained within Plaintiff's exhibits are invoice sheets showing continued business transactions of "Material Girl" products. (*See* Lakhani Decl. ¶¶ 20-21, 29, Ex. 4.) Plaintiff provides factually contradicting evidence that it did not abandon its trademark. Such a genuine issue of material fact must be presented before a jury. As such, the Court finds that summary judgment is inappropriate.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 10-06195 SJO (JCx)</u> | **DATE:** <u>August 31, 2011</u> |

III.     <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.