**GREENBERG TRAURIG, LLP**
George M. Belfield (SBN 100272)
Email: *belfieldg@gtlaw.com*
Nina D. Boyajian (SBN 246415)
Email: *boyajiann@gtlaw.com*
Alana C. Srour (SBN 271905)
Email: *sroura@gtlaw.com*
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404-5524
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendants
MADONNA LOUISE VERONICA CICCONE;
MG ICON, LLC; MACY'S RETAIL
HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| L.A. TRIUMPH, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MADONNA LOUISE VERONICA CICCONE, an individual; MATERIAL GIRL BRAND, LLC, a Delaware limited liability company; MG ICON, LLC, a Delaware limited liability company; MACY'S RETAIL HOLDINGS, INC., a Delaware corporation; and DOES 1 through 10, <br><br> Defendants. | CASE NO. CV 10-6195 SJO (JCx) <br><br> **NOTICE OF MOTION AND MOTION IN LIMINE NO. 4 TO EXCLUDE EXPERT TESTIMONY OF ANTONIO R. SARABIA II, A "BUSINESS PERSON AND ATTORNEY"** <br><br> Date:        October 11, 2011 <br> Place:       Courtroom 1 <br><br> Pre-Trial Conference: October 3, 2011 <br> Trial Date:  October 11, 2011 <br><br> Honorable S. James Otero <br><br> [Filed Concurrently With:  Declaration of Nina D. Boyajian; [Proposed] Order] |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants MG Icon, LLC and Macy's Retail Holdings, Inc. will make a Motion in Limine on October 11, 2011 in Courtroom 1 of the above-entitled Court before the Honorable S. James Otero, judge presiding, to exclude plaintiff's proposed expert testimony of Antonio R. Sarabia II, a "business person and attorney," on the grounds that Mr. Sarabia's expert report offers improper, conclusory and inadmissible legal opinions.

The Sarabia Report makes such impermissible legal conclusions as: (a) "Purim did not have any trademark rights in 'Material Girl;' (b) "Licensor Purim did not provide trademark rights in 'Material Girl' to licensee MG Icon;" (c) "The license of 'Material Girl' between Purim and MG Icon is a naked license;" and (d) "The documents provided by Live Nation, Winterland and Signatures are not reliable sources of information about the use of the 'Material Girl' trademark." *See*, Redacted Sarabia Report, pp. 4-5 (Document No. 99). Such legal conclusions about the parties' trademark rights are improper and issues that are to be determined by a judge and fact finder, not a hired expert, invades the province and responsibility of the Court, and should be excluded. The substance of Mr. Sarabia's Report also lacks foundation and is improperly conclusory. Moreover, Mr. Sarabia's Report and purported "expert" opinions are more prejudicial than probative, and should be excluded pursuant to Federal Rule of Evidence 403.

This motion will be based on the accompanying Memorandum of Points and Authorities and Declaration of Nina D. Boyajian, the pleadings and files in this action, and such other argument and evidence which may be presented at the time of the hearing on this motion.

Pursuant to this Court's Initial Standing Order Paragraph 24(a)(b)(6)(b), some of the issues raised in this motion were also raised in Defendants' *Ex Parte* Application For Order To Strike Declaration of Christopher W. Arledge Re Expert Report In Support Of Plaintiff's Opposition To Defendants' Motion For Summary Judgment Or Summary

1

Adjudication Of Issues And Supporting Documents (Document No. 102).  Declaration of Nina D. Boyajian, ¶ 6.  This motion is made after the Local Rule 7-2 meeting of counsel which took place on August 24, 2011.  *Id.*, ¶ 7.


Dated:  September 6, 2011                    GREENBERG TRAURIG, LLP


                                    By:  _____*/s/ Nina D. Boyajian*_____
                                         Nina D. Boyajian
                                         Attorneys for Defendants
                                         MADONNA LOUISE VERONICA
                                         CICCONE; MG ICON, LLC; MACY'S
                                         RETAIL HOLDINGS, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants MG Icon, LLC and Macy's Retail Holdings, Inc. make this Motion in Limine to exclude the expert testimony of plaintiff L.A. Triumph's designated trademark expert Antonio R. Sarabia II, a "business person and attorney," who wants to offer improper legal opinions and conclusions on trademark law and licensing issues. The Court should exclude Mr. Sarabia's proposed opinions and testimony because they usurp the Court's responsibility to interpret and instruct the jury on the law. Mr. Sarabia also improperly seeks to give "opinions" as to how the jury should apply the facts to the law, which is properly for the jury, not the expert witness, and even attempts to make evidentiary conclusions and findings. The opinions in Mr. Sarabia's report fall well beyond the scope of appropriate expert testimony and should be excluded.

## I.      THE "EXPERT" OPINIONS AND REASONS FOR EXCLUSION

On July 13, 2011, plaintiff served two "expert" reports, including the report of Antonio R. Sarabia II ("Sarabia Report"). Declaration of Nina D. Boyajian ("Boyajian Decl."), ¶ Ex. A.

## A.      The Court Should Exclude All Seven of Mr. Sarabia's Purported Expert Opinions.

Mr. Sarabia has worked in the apparel sportswear industry for twenty-five years "as a business person and attorney." Sarabia Report, p. 1. Mr. Sarabia is a transactional trademark attorney with some litigation experience. He readily admits that he knows that legal opinions are not admissible at trial, but he contends that he was hired as an expert to give business opinions, and not consider their inadmissibility as legal opinions. Boyajian Decl., Ex. B., i.e. Sarabia Depo., 25:4-27:25.

**Opinions A, B and C**. Mr. Sarabia first intends to give the following opinions which are all inadmissible legal opinions:

A.      Purim did not have any trademark rights in "Material Girl."

B.      Licensor Purim did not provide trademark rights in "Material Girl" to licensee MG Icon.

C.     The license of "Material Girl" between Purim and MG Icon is a naked license.

**Reasons To Exclude Opinions A, B and C.**  The court, not an "expert" attorney, interprets the law and instructs the jury.  These opinions about trademark rights and a naked license are obviously improper legal opinions.

### (a)     No Purim Or MG Icon Trademark Rights.

Mr. Sarabia's opinion that Purim, which licensed the Material Girl trademark rights to MG Icon, did not have any trademark rights in Material Girl in the first place, is based on his review of the testimony and documents he was given in this case which he admits are incomplete, and certainly not the universe of documents related to Madonna and her business.  Sarabia Depo., 127:6-21; 150:17-151:14.  He claims this opinion is also based on "trademark licensing business standards," but he cannot name or describe those standards.  Sarabia Depo., 164:15-165:19.

While Mr. Sarabia admits that Madonna and her related companies Boy Toy and Bhakti Touring had trademark rights for Material Girl, Mr. Sarabia's contrary opinion that Purim had no such rights is based on the fact that he has not seen any evidence of written or an oral agreement to transfer those trademark rights from Madonna and her related companies to Purim.  Sarabia Depo., 120:14-130:15.

Mr. Sarabia's opinion, however, is contrary to well-established law which Mr. Sarabia admits was unknown to him, i.e., that the transfer or license of a trademark, besides being written or oral, is equally effective if implied by conduct or a course of dealing.  Assignments of trademark rights do not have to be in writing, and an "implied agreement to transfer" is valid where there is conduct manifesting agreement.  *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812,822 (3d Cir. 2006) ("Even if a writing is lacking, an assignment may be proven in other ways.")   "Although it is true that assignment of trademark rights does not have to be in writing, an implied agreement to transfer requires conduct manifesting agreement."  *Seeburg Corp. v. AMR Pub.*, 80 F.Supp.2d 723, 728 (W.D.Mich. 1999); *see also* McCarthy on Trademarks, § 18:4.

2

Mr. Sarabia testified as follows:

> Q.    Now, you said Purim does not have any trademark rights. Is that your opinion?

> A.    Yeah.

> Q.    Why is that?

> A.    Because the entities that either had trademark rights like I'm confident of like Bhakti or Boy Toy or entities I don't know everything about, like Madonna, none of those entities gave trademark rights to Purim.

> Q.    How do you know that?

> A.    Because there's nothing in writing and we have testimony saying un-unh, no oral deals, no oral assignment. Mr. Oseary, O S E A R Y, I think testified that she never gave any oral assignment.

> Q.    Okay. So, based on your 25 years of experience, a license or an assignment of a trademark certainly can be in writing, correct?

> A.    Yes.

> Q.    And based on your 25 years of experience, a license or assignment of a trademark can be done orally, correct?

> A.    It's a possibility.

> Q.    And an oral assignment or license is just as legally enforceable as a written assignment or license, correct?

> A.    Often, yes.

> Q.    Are there any other ways, based on your experience as a trademark person and lawyer for trademark rights to be transferred to somebody like Purim?

> A.    Well, not from somebody like Madonna to somebody like Purim. It would be oral or in writing.

3

Q.     How about an implied by conduct or course of conduct, transfer of trademark rights?

A.     I'm not familiar with that in licensing.

Q.     You've never seen any legal discussion about the transfer of a trademark right by implied conduct?

A.     I don't recall that. It could be. I don't recall.

Sarabia Depo., 129:7-130:24.

Mr. Sarabia also admits that he does not know, and has no facts or evidence to assist him, as to whether Madonna, Boy Toy, or Bhakti Touring ever complained about or questioned defendants' rights to use the Material Girl mark.  Sarabia Depo., 153:20-155:18.  Mr. Sarabia's opinion is contrary to the law and, therefore, not reliable or admissible.  He should be barred from giving any opinion about (1) Purim not having any trademark rights in Material Girl and (2) Purim not providing any trademark rights in Material Girl to MG Icon.

**(b)     The License of Material Girl Between Purim and MG Icon is a Naked License.**

According to Mr. Sarabia, a naked license "means that the licensor has not retained quality control rights … nor exercised them.  And, therefore the licensee is allowed unfettered use of the mark or brand."  Sarabia Depo., 75:14-23.  To Mr. Sarabia, the term naked license has a combined legal and factual meaning.  He, however, is careful to say that he has no opinion about the consequences of a trademark being obtained through a naked license because that is a "legal consequence of a factual event, and I'm not giving legal opinions in this case."  Sarabia Depo., 75:24-76:24.

The nature meaning and legal effect of a naked license is for the Court to determine and instruct the jury.  There is no need for expert testimony or argument for the jury. This "naked license and opinion should be excluded.

**Opinion D.**  "Apparel branding is very important to retail stores such as Macy's."

**Reasons to Exclude Opinion D.**  This "opinion" is a factual conclusion derived from Mr. Sarabia's reading of Macy's SEC reports.  There is no "expert opinion"

involved.

**Opinion E.**  "L.A. Triumph (and its predecessors) have sold apparel with the 'Material Girl' mark in the same segment of the apparel market in which Macys' [sic] sells apparel."

**Reasons to Exclude Opinion E.**  Mr. Sarabia also has no foundation for his opinion and conclusion that L.A. Triumph "did significant sales in the same brand category as Macy's."  Sarabia Depo., 98:20-99:21; 143:12-144:10.  In arriving at that opinion, he compared irrelevant and non-comparable time periods, *i.e.*, L.A. Triumph's predecessors' 2002 and 2003 sales invoices, mostly to discount stores like Ross Dress For Less and Beale's Outlets, to Macy's 2010 department store sales, *i.e.*, seven or eight years later. Sarabia Depo., 108:25-110:10; 111:7-112:18.

Mr. Sarabia admitted that he has no information or foundation for this opinion for the more relevant and comparable years 2005 to 2011.  Mr. Sarabia testified that he did not even consider L.A. Triumph's sales from 2005 to 2010 – presumably because they were so small that a contemporaneous "market segment" comparison would not serve plaintiff's purpose.  Sarabia Depo., 188:25-189:5; 189:10-190:24

Finally, Mr. Sarabia admitted that the proper way to compare L.A. Triumph and Macy's market segments would be to compare the two parties' sales in the same years, *i.e.* 2010 and 2011, and not look at L.A. Triumph's aged and mostly irrelevant 2002-2003 sales to Macy's current sales:

> Q.    But if you are comparing Macy's and L.A. Triumph Material Girl market segments, you have to admit that it is more appropriate to compare the same years, apples to apples than to compare sales from Macy's in 2010 to L.A. Triumph sales in 2002 and 2003. You will give me that, right?
>
> A.    I'll give you that, sure.
>
> Q.    And the reason that you did not do that, compare compare an sales [sic] and compare an time periods [sic] is because you had no sales invoices from L.A. Triumph to do that, right?

5

> A.      No, we've been through that about four times. I said I didn't total other time periods. I didn't even determine whether there were or weren't in other time periods. I looked at the invoices I had and decided to select this time period. And I was trying to make a determination whether L.A. Triumph had significant sales in the same market segment. And in this time period it did and that's my opinion.

Sarabia Depo., 201:18-202:13.

**Opinion F:** "Concert related apparel is in a different segment of the apparel market than apparel sold in department and specialty stores."

**Reasons to Exclude Opinion F**.  Mr. Sarabia is not remotely qualified to give this opinion.  He has never represented any person or entity in the music industry.  Sarabia Depo., 45:6-8.  He has never represented any licensor or licensee, person or entity with respect to sales of clothing at concerts.  Sarabia Depo., 45:9-12.  He has never done any business or legal work with respect to sales of merchandising including clothing at concerts.  Sarabia 45:13-15.  He has no experience with the reasons people buy T-shirts or merchandise at concerts, and has never done any studies or investigation on the issue. Sarabia Depo., 46:6-12.  He has never even been to a Madonna concert.  Sarabia Depo., 50:24-51:1.

Yet, Mr. Sarabia testified that in his opinion that there is a fundamental difference between clothing sales at concerts and at retail stores, *i.e.* they are different "market segments," and his bald opinion is "based on my 25 years of business experience in the apparel business."  Sarabia Depo., 46:13-47:1; 49:3-10.  But in those 25 years, he has never done any work with respect to selling merchandise at concert venues.  Sarabia Depo., 47:2-6. Mr. Sarabia has no experience or expertise in the music industry, including concert merchandising and related apparel and he is not qualified to give this foundationless and self- serving opinion.

**Opinion G:**  The documents provided by Live Nation, Winterland and Signatures are not reliable sources of information about the use of the "Material Girl" trademark.

NOTICE OF MOTION AND MOTION IN LIMINE NO. 4 TO EXCLUDE EXPERT TESTIMONY OF ANTONIO R. SARABIA II, A "BUSINESS PERSON AND ATTORNEY"

**Reasons to Exclude Opinion G**.  This is an opinion on the admissibility and reliability of evidence which is a subject for the court or the jury and not expert testimony.  Mr. Sarabia even admits:  "I'm not working in this case as an expert on the law of evidence nor do I, in general, profess to be an expert in the law of evidence." Sarabia Depo., 26:6-20.

Mr. Sarabia also has no foundation for his opinion that the Live Nation documents showing Material Girl sales are "not reliable" or "fiction."

> Q.     So, do you believe that the Live Nation documents that were provided to you are fiction?
>
> A.     I believe they are unreliable. And I never talked to anybody that made them or wrote them.  So I'm not saying somebody lied when they wrote them.  I'm just saying looking at them they are unreliable.  Nobody should rely on these.
>
> Now, I'm not accusing anybody of lying because I don't know who did it and I don't know the circumstances.  But I was trying to look at it, okay, is this something that an independent open minded person can comfortably rely upon as establishing use of a trademark.  And the answer to that was open and shut, no.
>
> \*          \*          \*
>
> Q.     So you don't believe those documents?
>
> A.     I don't believe they establish use of the Material Girl trademark, okay, because they are unreliable.

Sarabia Depo., 78:20-80:14.

> Q.     Is there anything that you saw on the document that specifically suggested to you that they were forged, false, fake or anything like that?
>
> A.     I'm not an independent document examiner. That's not my credential and I won't be offering any opinions as to the validity of documents whether they were forged or altered.  That's outside the scope of my expertise.
>
> Q.     But your opinion to the jury is going to be that they should not rely on those Live Nation documents, correct?

7

A.     Yes.

Sarabia Depo., 84:18-85:5.

# ARGUMENT

## A.     The Legal Standards For The Admissibility Of Expert Opinions.

The trial court, of course, as the "gatekeeper" under FRE Rule 702, reviews preliminary questions regarding the admissibility of expert, or any other, witness testimony and evidence.  Federal Rules of Evidence 104(a); *Daubert v.* Merrell *Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).  The proponent of the expert's proposed testimony bears the burden of establishing its admissibility.  *Daubert,* 509 U.S. at 592, fn. 10; Federal Rules of Evidence 702.  Plaintiff cannot do so here.

"To be admissible, 'expert testimony must…address an issue beyond the common knowledge of the average layman.'"  *Mukhtar v. Cal. State Univ.*, 299 F. 3d 1053, 1065, fn. 9 (9th Cir. 2002) (citation omitted); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) (district courts act as gatekeeper not only as to scientific expert testimony, but also non-scientific specialized knowledge).  The goal is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.  "In assessing the reliability of an expert opinion, a resort to common sense is not inappropriate." *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 286 (2000).

## B.     Mr. Sarabia's Opinions Are Inadmissible Legal Opinions.

An expert also cannot offer an opinion and testify as to the law.  Experts "'do not testify about the law because the judge's special legal knowledge is presumed to be sufficient.'"  *See U.S. v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (citations omitted); *see also Ritchie v. Wahiawa Gen. Hosp.*, 597 F. Supp. 2d 1100, 1108, fn. 13 (D. Haw. 2009) (noting that one "cannot rely on [an experts] legal opinion to establish the ultimate issue of law.")  "[E]xpert testimony cannot 'usurp the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before

it.'" *TC Systems Inc. v. Town of Colonie*, 213 F.Supp.2d 171, 181 (N.D.N.Y. 2002) (citations omitted); *see also CFM Communs., LLC v. Mitts Telecasting Co.*, 424 F.Supp.2d 1229, 1234-1237 (E.D. Cal. 2005) (granting motion to exclude expert testimony that "read like a legal brief").

Likewise, expert opinions that simply tell the jury what result to reach are also inadmissible. *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (citing Advisory Committee Note to Rule 704).

> Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard--explicit or implicit--to the jury. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury….The basis of expert capacity, according to Wigmore (§ 555), may 'be summed up in the term "experience."' But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law.  The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge--surely an inadmissible inference in our system of law.

*Id.* at 364 (citations omitted).

Mr. Sarabia's Opinions A, B, C and E are all in admissible legal opinions and conclusions about the parties' trademark rights, and are issues to be determined by a judge and fact finder, not a hired expert.

## C. Mr. Sarabia's Report And Proposed Testimony Does Not Satisfy The Reliability Requirement Of Rule 702.

An expert's purpose is to help the trier of fact understand the evidence or determine facts in issue. *Selvidge v. U.S.*, 160 F.R.D. 153, 155 (D. Kan. 1995). "An expert witness should never become one party's expert advocate." *Id.* at 156.  Thus, an expert may not merely recite the allegations of the party for whom he is testifying in the guise of an opinion; this "does nothing but vouch for the credibility of another witness…, and therefore does not assist the trier of fact as required by Rule 702." *Finley*, 301 F. 3d

9

at 1009.  Here, Mr. Sarabia's opinions are inadmissible because he simply reiterates plaintiff's legal positions.

**D.    Mr. Sarabia's Report And Proposed Testimony Is More Prejudicial Than Probative And Must Be Excluded Under Rule 403.**

Under FRE Rule 403, expert testimony which otherwise fulfills FRE Rule 702's requirements, is still inadmissible if the probative value of such testimony is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Federal Rules of Evidence 403.

Here, Mr. Sarabia's opinions are unfair and prejudicial because they basically seek to instruct the jury how to make its decision without offering any expert reasons or factual basis.  *In Re Hanford Nuclear Reservation Litigation*, 534 F. 3d 986, 1016 (9th Cir. 2008).

## CONCLUSION

Defendants respectfully request that the Court grant this Motion in Limine and order that plaintiff may not offer the proposed expert testimony of Mr. Sarabia in its entirety, or exclude the specific opinions and subject matters the Court concludes should be excluded

Dated:  September 6, 2011                    GREENBERG TRAURIG, LLP


By:    _____*/s/ Nina D. Boyajian*_____
          Nina D. Boyajian
          Attorneys for Defendants
          MADONNA LOUISE VERONICA
          CICCONE; MG ICON, LLC; MACY'S
          RETAIL HOLDINGS, INC.

*LA 129,772,167v3*